IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN GARCÍA-SILVA,

    Plaintiff,

    v.

MUNICIPALITY OF ARECIBO, et al.,

    Defendants.

CIVIL NO. 13-1795 (PAD)

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

    Carmen García-Silva initiated this action against the Municipality of Arecibo, its Mayor Carlos Molina-Rodríguez and its Director of Personnel and Administration, Ms. Ileana Martínez-Rosado, claiming that she was retaliated against for speaking as a citizen on a matter of public concern, in violation of the First, Fifth, and Fourteenth Amendments to the U.S. Constitution, and Puerto Rico law (Docket No. 1). Defendants have denied liability. All parties moved for summary judgment (Docket Nos. 51 and 54), opposed each other's motions (Docket Nos. 70 and 71), and the defendants replied to plaintiff's opposition (Docket No. 74). For the reasons explained below, Docket No. 51 is GRANTED, Docket No. 54 is DENIED, and the complaint is DISMISSED.

**I.    BACKGROUND**

    Plaintiff – who occupied the position of Person in charge of property – alleges that while in charge of the disposal of the Municipality's equipment, she sought and obtained several offers for the purchase of useless equipment (Docket No. 1 at ¶ 7). She made a sales recommendation to the Mayor, but later found out the equipment had been sold via auction for $6,600.00 less than the quote included in one of the offers that she had received. Id. at ¶ 8. Concerned about the difference,

Case 3:13-cv-01795-PAD   Document 75   Filed 03/25/15   Page 2 of 9

García-Silva v. Municipality of Arecibo, et al.
Civil No. 13-1795 (PAD)
Opinion and Order
Page 2

she sent a text message to the Mayor. Id. In response, she was reassigned to another position (with less pay). Id. at ¶¶ 9-10.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A factual dispute is "genuine" if it could be resolved in favor of either party. It is "material" if it potentially affects the outcome of the case in light of applicable law. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004). Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows. Based on those facts, defendants are entitled to judgment as a matter of law.

## III. FACTUAL FINDINGS

A. The Parties

Plaintiff is employed with the Municipality of Arecibo. Until May 14, 2013, she was the Person in charge of the Municipality's property (Docket No. 54, Exh. 1, Plaintiff's Statement of Uncontested Facts ("PSUF") ¶ 1). Molina-Rodríguez is the Mayor of Arecibo. PSUF ¶ 3. Martínez-Rosado was the Director of Personnel and Administration of the Municipality. PSUF ¶ 4.

B. Person in Charge of Property

The Person in charge of property works under the supervision of the Director of Finance or the Administrator of the Municipal Hospital (Docket No. 50, Defendants' Statement of Uncontested Facts ("DSUF") ¶ 6). The duties of the position include receipt, custody and control of the Municipality's property, and related tasks. DSUF ¶ 3. This requires, *inter alia*, knowledge

Case 3:13-cv-01795-PAD   Document 75   Filed 03/25/15   Page 3 of 9

García-Silva v. Municipality of Arecibo, et al.
Civil No. 13-1795 (PAD)
Opinion and Order
Page 3

of laws, regulations, and norms applicable to the custody and control of public property, as well as of office practices and techniques. DSUF ¶ 8. The job is evaluated via supervisory meetings and reports. DSUF ¶ 5.

At no time during plaintiff's tenure as Person in charge of property was she required to publicly speak as an employee, or told that the position required her to do so. PSUF ¶ 10. The corresponding job availability announcement includes no such requirement. PSUF ¶ 13.

C. Sale of Municipal Property

The Auction Board Regulation – Regulation No. 34, Series 2002-2003 – governs the norms and procedures to be followed for sales of municipal property. It specifically prescribes sales via an auction process to the highest bidder. DSUF ¶¶ 9-11. Municipal Ordinance No. 44 ("Ordinance No. 44"), series 2012-2013, authorizes the Mayor to sell municipal property that has been designated as junk. DSUF ¶ 12. In compliance with the Auction Board Regulation, Ordinance No. 44 requires that the property to be sold via auction to the highest bidder, and that the bids be submitted under seal. DSUF ¶ 14.

D. Incidents Prior to the Auction

Prior to the auction, plaintiff sought and received – on behalf of the Municipality – several price quotes from companies interested in acquiring junk property belonging to the Municipality. DSUF ¶ 25, and PSUF ¶ 8. She submitted the offers to the Municipality's Bidding Office on two separate occasions, but the Office did not accept them. PSUF ¶ 5.

E. Bidding Process

On April 8, 2013, a notice for the sale of junk municipal property was published in a general circulation newspaper. DSUF ¶ 15. On April 26, 2013, the president of the Auction Board and

three other members met and opened the sealed bids as required by Ordinance No. 44. DSUF ¶¶ 16-17.

After the bids were opened, the Auction Board decided to sell the junk property to Omega Steel Recycling Corp., which submitted the highest bid at $19,500.00. DSUF ¶¶ 18-19. On May 1, 2013, Omega Steel was notified that it had been awarded the auction, and received the property between May 17 and 21 of that same year. DSUF ¶¶ 21 and 23. Plaintiff was notified on May 8, 2013. DSUF ¶ 22.

F. Text Message and Subsequent Events

Upon learning the outcome of the auction, plaintiff sent a text message to the Mayor's personal cellphone indicating: "I regret to inform you that of the bid you failed to obtain $6,600 since there were better bidders that had requested, had even come to see the junk in the transport and equipment area. It is a pity with the need there is for money. They were good . . . Carmen García." DSUF ¶ 31 and PSUF ¶ 6.

The Mayor viewed the message as unprofessional and as an improper means to channel a grievance about a municipal action, and contacted the president of the Auction Board. DSUF ¶ 32. An inquiry followed, as part of which defendants concluded that plaintiff had solicited bids outside the scope of norms requiring interested parties to submit their sealed bids through the auction process. DSUF ¶¶ 33-34. As a result, the Mayor lost trust in plaintiff's ability to perform the job of Person in charge of property, and decided that it would be best to relocate her to a different position. DSUF ¶ 35.

On May 10, 2013, Martínez-Rosado sent plaintiff a letter indicating that (1) she had exceeded her functions, (2) the Mayor had lost trust in her, and (3) she was being reassigned to the position of Person in charge of the library. DSUF ¶ 36 and PSUF ¶ 7. Martínez-Rosado has no authority to

Case 3:13-cv-01795-PAD   Document 75   Filed 03/25/15   Page 5 of 9

García-Silva v. Municipality of Arecibo, et al.
Civil No. 13-1795 (PAD)
Opinion and Order
Page 5

fire, hire, transfer, relocate or demote employees. Those functions correspond to the Mayor. DSUF ¶ 38.

The person who previously held the position of Person in charge of the library worked for, and was paid on a five-day weekly basis. In that same position, plaintiff is paid on a four-day weekly basis. The person who replaced her as Person in charge of property is paid on a five day basis. PSUF ¶ 9.

G.  Work Reduction

Municipal Ordinance No. 37 – enacted in response to the financial crisis faced by the Municipality – authorized the Mayor to reduce the workweek of municipal employees. DSUF ¶ 39. Effective February 1, 2013, the Mayor reduced the workweek of virtually all employees paid with ordinary funds by one day. Plaintiffs' workweek was affected by this measure, which was extended on June 5, 2013, to cover all employees paid with ordinary funds. DSUF ¶ 40.

IV.  DISCUSSION

A. First Amendment

Plaintiff claims she was retaliated against in violation of the First Amendment, for speaking out as a citizen on a matter of public concern. The First Amendment provides that state actors "shall make no law abridging freedom of speech." U.S. Const. Amend. I. Its scope is not absolute. It accords government instrumentalities far wider authority, discretion, and leeway in their dealings with citizen employees than the government is allowed when it brings its power to bear on citizens at large. Borough of Duryea, Pa. v. Guarnieri, --- U.S. ---, 131 S.Ct. 2488, 2497 (2011). As such, when citizens enter government service, they must accept limitations on their freedom linked to the unique nature of the government's interest in managing its administrative affairs, operations,

and workforce to ensure satisfactory provision of public services. Garcetti v. Ceballos, 547 U.S. 410, 418 (2006); Duryea, 131 S. Ct. at 2497.

The existence of limitations does not, however, mean that public employees relinquish all of their First Amendment rights as citizens. City of San Diego, Cal. v. Roe, 543 U.S. 77, 80 (2004). As long as employees invoke speech rights as citizens about matters of public concern, they must face only those restrictions appropriate for their employers to operate effectively and efficiently. Garcetti, 547 U.S. at 418. Conversely, if those rights are not implicated, the employee has no First Amendment cause of action based on her employer's reaction. Connick v. Myers, 461 U.S. 138, 147 (1983); Garcetti, 547 U.S. at 418.

Not all matters related to a government office are of public concern for First Amendment purposes. Whether they are so depends on context, content, and form. Duryea, 131 S. Ct. at 2501; Decotiis v. Whittemore, 635 F.3d 22, 32 (1st Cir. 2011); Barnes v. Small, 840 F.2d 972, 983 (D.C. Cir. 1988). Absent the most unusual of circumstances, a federal court is not the appropriate forum in which to review a personnel decision taken by a public entity in reaction to the employee's behavior. Engquist v. Oregon Dept. of Agr., 553 U.S. 591, 600 (2008).

The record shows plaintiff was speaking as an employee rather than as an ordinary citizen when she sent the message upon which she predicates this action. The subject matter of the speech – the sale of municipal property – is directly related to the duties plaintiff was required to carry out as Person in charge of property. Garcetti, 547 U.S. at 421. The comment that the Municipality had failed to obtain $6,600.00 from other bidders is grounded upon information plaintiff gathered while acting on behalf of the Municipality. Decotiis, 635 F.3d at 32; Williams v. Dallas Independent School Dist., 480 F.3d 689, 694 (5th Cir. 2007). The message was sent up plaintiff's chain of command, to the Mayor, the Municipality's highest authority, by way of the Mayor's cellular

García-Silva v. Municipality of Arecibo, *et al*.
Civil No. 13-1795 (PAD)
Opinion and Order
Page 7

phone. Garcetti, 547 U.S. at 421. In those circumstances, restricting speech that owes its existence to a public employee's responsibilities simply reflects the exercise of employer control over what the employer itself has commissioned or created as part of the job. Id.[1]

Plaintiff claims that the job availability announcement for her position did not include the requirement that the person be a spokesperson for the Municipality, and that at no time she was required to publicly speak as an employee; the inference purportedly being, that she then must have been speaking as a citizen.[2] But the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that a particular task is within the ambit of the employee's duties for First Amendment purposes. Id. at 425; Foley, 598 F.3d at 6.

What matters is the context, content and form of the speech (in this case, of the message). Here, those elements show an employee with sales-related responsibilities disagreeing with a sales decision made by the employer, and expressing that disagreement in a message directed to the employer's highest executive authority. The First Amendment "does not require displacement of managerial discretion by judicial supervision" in determining how best to approach this type of workplace disagreement. Garcetti, 547 U.S. at 543.

---

[1] In Lane v. Franks, --- U.S. ---, 134 S.Ct. 2369 (2014), the Supreme Court held, in the context of testimony given at trial, that the mere fact that the witness' testimony concerned information acquired by virtue of his public employment, did not transform speech into employee speech. Id. at 2378. In the instant case, rather than relying on that single factor, the Court has taken into account all of the relevant elements. Those elements, in turn, lead to the conclusion that the speech at issue was made as an employee.

[2] Also, in her Statement under Penalty of Perjury, plaintiff claims to have sent the message as a citizen of Puerto Rico and resident of the Municipality of Arecibo (Docket No. 54, Exh 2 at ¶ 9). Where, as here, the material facts are not in dispute, the issue of whether the speech was made as a citizen or as an employee is a question of law for the Court to decide. Foley v. Town of Randolph, 598 F.3d 1, 5 n. 7 (1st Cir. 2010); Wilburn v. Robinson, 480 F.3d 1140, 1149 (D.C. Cir. 2007); Connick, 461 U.S. at 148 n. 7.

B. **Due Process Clause**

Plaintiff claims defendants retaliated against her in violation of the Fourteenth and Fifth Amendments (Docket No. 1 at ¶ 1). The Court first takes plaintiff's claim as one made in connection with the Fourteenth Amendment's Due Process Clause, which has a procedural and a substantive aspect. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990).

In order to prevail on a procedural due process claim, plaintiff must show a constitutionally protected property interest in the functions of her job. Rojas-Velázquez v. Figueroa-Sancha, 676 F.3d 206, 212 (1st Cir. 2012). That finding focuses on local law. Id. Under Puerto Rico law, a public employee may have a property interest in continued employment, but not in the particular functions of the job. Id.

Despite the fact that plaintiff was relocated to a different position, to wit, Person in charge of the library, she continues to work for the Municipality. Being an employee, she has not been deprived of a property interest for which process is due. Thus, her claims under the procedural aspect of the Fourteenth Amendment must be dismissed. Rojas-Velázquez, 676 F.3d at 212.

A claim is cognizable as a violation of substantive due process when it is so extreme and egregious as to shock the contemporary conscience. McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006). Substantive due process is an inappropriate avenue of relief when the governmental conduct at issue is arguably covered by a specific constitutional provision. Pagán v. Calderón, 448 F.3d 16, 33 (1st Cir. 2006). Here, plaintiff's claims are predicated on First Amendment retaliation grounds. For that reason, her substantive due process claims must be dismissed.

As to the due process argument under the Fifth Amendment, the First Circuit has held that the Amendment applies only to actions of the federal government – not to those of state or local governments. Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007). To the extent

none of the defendants are federal actors, plaintiff's claims under the Fifth Amendment must be dismissed.

### C. State Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state claims when the federal claims that gave it original jurisdiction are dismissed. See, 28 U.S.C. § 1367(c)(3)(so specifying). Since the federal constitutional claims will be dismissed, the remaining state claims must be dismissed, without prejudice. Boche v. John Hancock, 81 F.3d 249, 256-257 (1st Cir. 1996); Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995).

### V. CONCLUSION

In view of the foregoing, "Defendants' Joint Motion for Summary Judgment" (Docket No. 51) is GRANTED, plaintiff's "Motion for Summary Judgment" (Docket No. 54) is DENIED, and the complaint is DISMISSED, with state claims being DISMISSED WITHOUT PREJUDICE. Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of March, 2015.

S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO HERNANDEZ
U.S. DISTRICT JUDGE